## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY,<br>    Plaintiff, | : <br> : <br> : <br> : | CIVIL CASE NO.<br>3:20-CV-0568 (JCH) |
| v. | : <br> : | |
| VERSAILLES MEDICAL SPA, LLC, ET AL.,<br>    Defendants. | : <br> : <br> : | OCTOBER 25, 2022 |

### RULING RE: MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 100 & 102)

## I.    INTRODUCTION

Plaintiff Admiral Insurance Company ("Admiral") brings this action against the following defendants: Versailles Medical Spa, LLC ("Versailles"), a medical spa in Connecticut; Marie Saade ("Saade"), the spa's founder and CEO; and Robin Nye ("Nye"), a nurse who worked at Versailles during the relevant period.  Admiral seeks a declaratory judgment that it has no duty to defend or indemnify the defendants in an underlying action filed in Connecticut Superior Court.  See Lillian Voigt v. Robin Nye, RN, et al., FST-CV-19-6039874-S (Conn. Sup. Ct. 2019).  In response, the defendants have filed Counterclaims alleging four counts of bad faith against Admiral.  See Corrected Third Am. Answer (Doc. No. 92).

Now before the court are the defendants' Motion for Summary Judgment as to Admiral's claims (Doc. No. 100) and Admiral's Motion for Partial Summary Judgment as to the defendants' bad faith Counterclaims (Doc. No. 102).  For the reasons explained below, the court denies the defendants' Motion and grants Admiral's Motion as to the defendants' Counterclaims.

## II.    BACKGROUND

The underlying action arises out of treatments that Versailles provided to Lillian Voigt ("Voigt") in August 2016.  See Plaintiff's Local Rule 56(a)2 Stmt. of Facts ¶ 6 (Doc. No. 101-2) ("Pl.'s 56(a)2 Stmt."); Defendants' Local R. 56(a)1 Stmt. of Facts ¶ 6 (Doc. No. 100-2) ("Defs.' 56(a)1 Stmt.").  To remove brown spots from Voigt's legs, the spa administered a course of Intense Pulse Light ("IPL") treatments to burn the darkened areas and break up the pigmentation.  Pl.'s 56(a)2 Stmt. ¶ 2; Defs.' 56(a)1 Stmt. ¶ 2. The parties agree that the treatment burned Voigt's legs.  Pl.'s Local R. 56(a)2 Statement of Additional Material Facts ¶ 6 (Doc. No. 101-1) ("Pl.'s AMF"); Defendants' Reply to Plaintiff's AMF ¶ 6 (Doc. No. 101-6) ("Defs.' Reply AMF").  However, they dispute whether the burns were a normal side effect of IPL treatment.  See Defendants' Memorandum in Support of Motion for Summary Judgment at 21 ("Defs.' Mem.") (Doc. No. 100-1); Smola Affidavit ¶ 7 (citing Defendants' Answer in Underlying Case ¶ 18, Lillian Voigt v. Robin Nye, RN, et al., FST-CV-19-6039874-S (Conn. Sup. Ct. 2019) (Doc. No. 101-2 at 7).

They also disagree as to whether, around one month later, Voigt emailed the defendants.  See Pl.'s AMF ¶ 2; D's Reply AMF ¶ 2.  Admiral has produced a copy of an email sent by Lillian Voigt on September 29, 2016, which states "I would like to discuss my legs with you and Marie. They are completely discolored . . . [and] were sever[e]ly burned. . . . I would like to be reimbursed . . . ."  See Pl.'s AMF ¶ 2; Def.'s Reply AMF ¶ 2; Sept. 29, 2016 Email (Doc. No. 100-12).  However, the defendants deny having received this email, and the email itself is addressed not to the defendants, but to "Laurie Overby", who is a friend of Voigt and not a Versailles employee.  See Defs.' 56(a)1 Stmt. ¶ 10; Defs.' Reply AMF ¶ 2; Sept. 29, 2016 Email; Feb. 11, 2022 Dep. of

2

Lillian Voigt at 38 (Doc. No. 100-8).  Further complicating matters, Voigt's testimony as to whether she sent the email to the defendants has changed over time.  In her February 4, 2021 Deposition in the underlying action, Voigt stated: "I believe I wrote [the email] to Robin and cc'd Marie on it."  Feb. 4, 2021 Voigt Deposition at 15–17 (Doc. No. 66).  By contrast, in her February 11, 2022 deposition for the instant action, she denied having sent the email to the defendants.  See Feb. 11, 2022 Voigt Deposition at 38, 41. In any case, it is undisputed that defendant Saade met with Voigt on September 30, 2016, regarding Voigt's legs, and Saade agreed to waive certain costs of therapy from there on.  Pl.'s AMF ¶ 6; Defs.' Reply AMF ¶ 6.  Voigt sent a 'second' email to Saade on November 17, 2016, which states, in part, "I was thinking about coming in and doing lights on my legs once. I am not seeing much improvement."  Pl.'s AMF at ¶ 3; Nov. 17, 2016 Email (Doc. No. 101-2 at 5).  Voigt continued receiving care at Versailles through early 2017.  Pl.'s 56(a)2 Stmt. at ¶ 6.

In May 2017, Versailles applied to renew its professional liability insurance coverage.  Pl.'s 56(a)2 Stmt. ¶ 12; Defs.' 56(a)1 Stmt. ¶ 12.  To apply, the defendants filled out a form (the "Policy Application") that asked whether any Claims had been filed against Versailles or any of its employees.  See Policy Application (Doc. No. 100-13). The defendants responded "no."  Id. at 6.  After receiving the form, Admiral issued a professional liability policy ("the Policy") to Versailles for a policy period stretching from May 17, 2017 to May 17, 2018.  See Policy (Doc. No. 100-16).

Several sections of the Policy are relevant to the pending Motions.  First, the Policy defines a "Claim" as "a written demand for money or services by any Insured resulting from a Professional Incident . . . ."  Pl.'s 56(a)2 Stmt. ¶ 19; Defs.' 56(a)1 Stmt.

¶ 19; Policy § IV(E).  It elaborates that a "Professional Incident" is "a negligent act, error, or omission in the rendering of or failure to render Professional Services by the Insured . . . ."  Policy § IV(SS).  Second, the Policy's "Insuring Agreement" (the "Insuring Agreement") requires that a Claim first be made during the policy period in order to fall within the Policy's coverage.  See Policy § 1, Coverage A.   Third, the Policy carves out several exclusions, including a "Prior Knowledge" exclusion (the "Prior Knowledge Exclusion"), which absolves Admiral of liability for any "Claim . . . of which the person signing the Application for this Policy . . . was aware prior to the effective date of this Policy."  See Policy § VI(1)(A)(2).  Finally, the Reporting of Claims provision requires that "notices of Claims . . . must provide" information including "the circumstances by which the Insured first became aware of the specific Claim."  See Policy § X(5).

Admiral contends that Voigt's September 29, 2016 email constituted a Claim as defined in the Policy.  See Pl.'s 56(a)2 Stmt. ¶ 14.  The defendants disagree that the Policy's definition of a Claim applies to the Policy Application and assert that the September 29, 2016 email does not constitute a Claim.  Defs.' Defs.' 56(a)1 Stmt. ¶ 11.

On December 21, 2017, Voigt's attorney wrote to Saade and Versailles, informing them that Voigt had obtained counsel to represent her in relation to "injuries she sustained" on her legs and forehead during the August 23, 2016 procedure at Versailles.  Defs.' 56(a)1 Stmt. ¶ 16; Dec. 21, 2017 Letter from Attorney Green (Doc. No. 100-14).  The defendants state that Admiral was aware of Attorney Green's letter by January 4, 2018, but Admiral disagrees.  Defs.' 56(a)1 Stmt. ¶ 17; Pl.'s 56(a)2 Stmt. ¶ 17.

Voigt filed the underlying action on January 4, 2019, and in February 2019, Admiral hired Morrison Mahoney, LLP ("Morrison Mahoney"), to defend Versailles, Saade, and Nye in that matter.  Pl.'s 56(a)2 Stmt. ¶ 25.  On December 30, 2019, Admiral sent the defendants a letter, copying Morrison Mahoney, disclaiming coverage and informing them that Admiral would no longer pay for their defense.  Pl.'s 56(a)2 Stmt. ¶ 27.  Morrison Mahoney moved to withdraw on February 3, 2020.  Id. ¶ 27; Defendants' Exhibit Q, Motion to Withdraw as Counsel (Doc. No. 100-19).  Voigt then sought a prejudgment remedy against Versailles, Saade, and Nye.  Pl.'s 56(a)2 Stmt. ¶ 28.  In response, the three defendants retained new counsel, Brennan Law Firm, LLC, to demand that Admiral provide coverage.  Id. ¶ 29.  On February 24, 2020, Admiral withdrew its disclaimer of coverage.  Id. ¶ 30.  Admiral hired a new law firm to represent the defendants in the underlying action, providing a defense pursuant to a complete reservation of Admiral's rights.  Id. ¶ 30–31.

On April 28, 2020, Admiral brought this action in federal court, seeking a declaratory judgment.  See Complaint ("Compl.") (Doc. No. 1).  The defendants filed an Answer on September 8, 2020, which they twice amended within the month.  See Answer (Doc. No. 20); Amended Answer (Doc. No. 23); Second Amended Answer (Doc. No. 24).  Before engaging in discovery, Versailles filed its first Motion for Summary Judgment, seeking a declaratory judgment that it had no duty to defend or indemnify Versailles in the underlying action.  See Plaintiff's First Motion for Summary Judgment (Doc. No. 26).  Specifically, Admiral argued:

> (1) the Policy's Insuring Agreement is not satisfied, and therefore does not cover Versailles, because the Voigt's Claim against Versailles was first made prior to the effective date of the Policy;

(2) the Policy's Prior Knowledge Exclusion bars coverage because Versailles had knowledge of Voigt's Claim prior to the effective date of the Policy;

(3) Versailles is not covered under the Policy because it breached the Reporting of Claims provision, which required Versailles, in reporting a claim to Admiral, to provide the circumstances by which Versailles first became aware of the specific Claim; and

(4) Versailles is not covered under the Policy because "Condition G" of the Policy requires that statements made in the Policy Application be truthful and accurate, and Versailles indicated on its May 2, 2017 Policy Application that they had not received any claims and were not aware of circumstances which might result in a claim against them.

Ruling Denying Plaintiff's First Motion for Summary Judgment at 2 (Doc. No. 85) (citing Plaintiff's Memorandum in Support of First Motion for Summary Judgment at 1-2 (Doc. No. 26-1)).  This court denied Admiral's Motion on the ground that Admiral's first three arguments hinged on a disputed issue of material fact: whether Voigt's September 29, 2016 email constituted a Claim under the Policy.  Id.  As to Admiral's fourth argument, the court concluded that an issue of material fact precluded summary judgment, as Admiral failed to establish what definition applied to the term "Claim" as used in the Policy Application.  Id. at 3-4.

After ruling on the plaintiff's first summary judgment Motion, the court granted defendants leave to file a Third Amended Answer.  See Third Amended Answer (Doc. No. 91); Corrected Third Amended Answer ("Corrected Third. Am. Answer") (Doc. No. 92).  In their Third Answer, the defendants relied on Voigt's February 11, 2022 testimony to expressly deny that they had received Voigt's September 29, 2016 email about her leg burns.  See Corrected Third. Am. Answer ¶ 19.

Now, after the close of discovery, both parties have filed Motions for Summary Judgment.  The defendants' Motion seeks a declaratory judgment that they are entitled

to coverage under the Policy, and summary judgment as to Admiral's claims that: (1) the Insuring Agreement was not satisfied; (2) the Prior Knowledge Exclusion bars coverage; (3) the defendants breached the Reporting of Claims Provision by failing to report the circumstances by which it became aware of the Claim.  See Defs' Mem; Plaintiff's Opposition to Motion for Summ Judgment (Doc. No. 101); Defendants' Reply to Objection to Motion for Summary Judgment ("Defs.' Reply") (Doc. No. 106).  In the plaintiff's Motion, Admiral seeks partial summary judgment as to the defendants' four counts of bad faith against Admiral for: (1) litigating the instant action; (2) failing to properly investigate the coverage Claim; (3) failing to properly defend the underlying case; and (4) failing to defend and indemnify the defendants for Voigt's later claim that she injured her forehead during the same IPL session.  See Defendants' Memorandum in Opposition to Motion for Summary Judgment ("Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J.") (Doc. No. 107); Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. for Summ. J.") (Doc. No. 102); Corrected Third Am. Answer (Doc. No. 92).

## III.   LEGAL STANDARD

A motion for summary judgment will be granted if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A genuine issue of material fact exists where the evidence is such that a reasonable jury could decide in

the non-moving party's favor. <u>See, e.g.</u>, <u>Biondo v. Kaledia Health</u>, 935 F.3d 68, 73 (2d Cir. 2019) (citing <u>Anderson</u>, 477 U.S. at 248).

Where, as here, the court considers multiple motions for summary judgment, the court must apply the same standard as that used for deciding individual motions for summary judgment.  <u>See</u> <u>Penguin Group (USA) Inc. v. Steinbeck</u>, 537 F.3d 193, 200 (2d Cir. 2008) (explaining that facts must be construed in the light most favorable to the non-moving party for each motion for summary judgment).

## IV.    DISCUSSION

This case, at its core, is about whether the Policy's coverage extends to Voigt's claim against the defendants in the underlying action.[1]  In its Complaint, Admiral alleges that the Policy does not extend to Voigt's claim for three reasons: (1) Voigt first raised a Claim in her September 29, 2016 email before the May 2017 to May 2018 policy period, so the Insuring Agreement was not satisfied;[2] (2) the defendants knew about Voigt's email Claim before the Policy's effective date, so the Prior Knowledge Exception applies;[3] and (3) the defendants failed to report the circumstances by which they learned of Voigt's email Claim, violating the Policy's Reporting of Claims provision.[4]  <u>See generally</u> Compl.

---

[1] It is well established under Connecticut law that an insurer has a duty to defend where the allegations in the underlying Complaint fall even possibly within coverage.  <u>See</u> <u>DaCruz v. State Farm Fire & Casualty Co.</u>, 268 Conn. 675, 688 (2004).  Here, Admiral is providing a defense under a reservation of rights and has brought this action to determine a disputed issue of coverage.

[2] Under the Policy's Insuring Agreement, the Policy covers Claims first made within the policy period (May 17, 2017 to May 17, 2018).  Policy § 1, Coverage A.

[3] Under the Prior Knowledge Exclusion, Claims are excluded from coverage if the insured knew of the Claims before signing the Policy Application.  Policy § VI(1)(A)(2).

[4] Under the Reporting of Claims provision, a notice of a Claim must provide the circumstances by which the Insured first became aware of the Claim.  Policy § X(5).

Each of Admiral's alleged reasons for denying coverage hinges on at least one of the following assumptions: (1) Voigt sent the defendants an email (2) containing a Claim (3) before the defendants filled out the Policy Application or before the policy period began (4) which the defendants failed to properly report.  The first, third, and fourth of these assumptions turn largely on one disputed issue of material fact: whether the defendants received Voigt's September 29, 2016 email.  <u>Compare</u> Feb. 4, 2021 Voigt Deposition at 15–17 (stating she sent defendants the email on September 29, 2016) <u>with</u> Feb. 11, 2022 Voigt Deposition at 38, 41 (stating she did not send defendants the email).  It is the province of the factfinder, not this court, to resolve the factual dispute as to whether the defendants received Voigt's September 2016 email.

Whether the defendants' received Voigt's September 29 email clearly raises an issue of material fact.  However, a question remains as to whether <u>any</u> reasonable juror could determine that the email constituted a Claim under the Policy.  Put more directly, if no reasonable juror could find that Voigt's September 29, 2016 email was a Claim, then it follows that, even assuming the defendants received Voigt's email, no reasonable juror could find that coverage was precluded for any of Admiral's alleged reasons, namely: (1) Voigt's email "Claim" predated the Policy Period (Insuring Agreement); (2) the defendants failed to properly note Voigt's email "Claim" on the Policy Application (Prior Knowledge Exclusion); or (3) the defendants failed to properly report the circumstances surrounding Voigt's email "Claim" (Reporting of Claims provision).

The court will address whether the definition of a Claim in the Policy applies to the Policy Application—as well as other issues raised in the defendants' Motion—before turning to the plaintiffs' Motion.

A.    Defendants' Motion for Summary Judgment (Doc. No. 100)

In the defendants' Motion for Summary Judgment, they assert that Admiral has failed to come forth with evidence on the basis of which a reasonable juror could find that Voigt made a Claim in her September 29, 2016 email.  First, they argue that the language of the Policy Application is ambiguous as to the meaning of the term "Claim." See Defs.' Mem. at 13.  Second, they argue that Admiral cannot demonstrate that the email constituted a Claim without producing expert testimony. See Defs.' Mem. at 9.

1.    Ambiguous Policy Application Language

The defendants' first ground for summary judgment is that the Policy Application's definition of "Claim" is ambiguous and must, therefore, be construed in the defendants' favor.  See Defs.' Mem. at 13.  Admiral contends that the defendants have not carried their burden to establish that the language in the Policy Application is ambiguous.  See Pl.'s Mot. for Summ. J. at 19.  The court agrees with Admiral.

 "[C]onstruction of a contract of insurance presents a question of law for the court." Aetna Life & Casualty Co. v. Bulaong, 218 Conn. 51, 58 (1991).  In the insurance context, courts construe policy language in accordance with "the intent of the parties as expressed by the language of the policy." Id.  In so doing, courts "give the natural and ordinary meaning to plain and unambiguous language in the provisions of an insurance contract." Kent v. Middlesex Mutual Assurance Co., 226 Conn. 427, 436 n.13, (1993); see also Tucker v. Am. Int'l Grp., Inc., 2015 WL 403195, at *12 (D. Conn. Jan. 28, 2015) (determining that a written letter from an employee's attorney listing the

10

costs of the employer's actions and seeking to resolve the matter through a severance package constituted a "Claim" under the plain and ordinary meaning of the term). However, "[i]f the insurance coverage is ambiguous, such ambiguity will be resolved against the insurer." Kent, 226 Conn. at 436 n.13.

Here, the defendants argue only that the definition of "Claim" in the Policy Application is ambiguous—they do not take issue with the meaning ascribed to "Claim" in the Policy itself.  See Defs.' Mem. at 13–15.  At least one other court in this District has concluded that an insurance policy's definition of "Claim" applied to the policy application where, as here, the definition of "Claim" was not separately defined in the application and the application was incorporated by reference into the Policy.  See Zurich Am. Ins. Co. v. Expedient Title, Inc., 2015 WL 9165875, at *12 (D. Conn. Dec. 16, 2015) (where, as in the instant case, the Policy stated that it was issued "in reliance upon" the statements in the Application); see also Dobuzinsky v. Middlesex Mut. Assur. Co., 49 Conn. App. 398, 405 (1998) (determining that the parties "clearly agreed to make the application for insurance part of the insurance contract between the parties").

Because here, as in Zurich, the Policy was issued "in reliance upon the statements in the Application", see Policy at 8, the court concludes that the language of the Policy and the Policy Application indicates that "the intent of the parties" was to apply the Policy's definition of "Claim" in both documents.[5]  See also Policy Application at 6 ("We nevertheless acknowledge . . . insurance issued by the Company in response

---

[5] The court acknowledges, as it must, that this conflicts with the Ruling issued on Admiral's first Motion for Summary Judgement.  See Ruling Denying Plaintiff's First Motion for Summary Judgment at 3 ("[I]t is unclear what definition applies to the term "Claim" as used in the Policy Application.").  This reversal is regrettable, but the court's commitment to reaching a fair and just conclusion dictated by law must come before its adherence to a prior Ruling.

11

to this Application will be in full reliance upon the statements and representations made in this Application and that this Application will be made part of the policy.").  With the court's conclusion as a matter of law that the meaning of a Claim laid out in the policy applies to the application, the governing definition is a written demand for money or services . . . resulting from a Professional Incident", i.e., "a negligent act, error, or omission . . . by the Insured . . . ."  See Policy at 11.  In Voigt's September 29, 2016 email, she wrote,

> "I would like to discuss my legs with you and Marie. They are completely discolored. It has been 5 weeks today since the procedure. I am appalled at your lack of concern. You have not answered my emails . . . . [O]bviously, my legs were sever[e]ly burned.  I would have expected you to take some responsibility for it and to have helped me. They were incredibly painful for 4 weeks . . . I would like to be reimbursed for the procedure and for all of the expenses I have incurred taking care of my legs th[u]s far and the ones going forward . . . ."

See Pl.'s AMF ¶ 2; Def.'s Reply AMF ¶ 2; Sept. 29, 2016 Email.  She then listed the costs she had incurred up to that point.  Id.  By the plain and ordinary meaning of the words, a reasonable juror could conclude that Voigt's email, if received, is a "Claim"—a written demand to the defendants for money, resulting from what Voigt alleges was negligent treatment by the defendants. See discussion supra p. 3.

Thus, because there is a genuine dispute of material fact as to whether the defendants received Voigt's email, see discussion supra pp. 8–9, and because the court has concluded as a matter of law that the unambiguous definition of a Claim outlined in the Policy applies to the Policy Application, the court declines to grant the defendants' Motion for Summary Judgment on the ground of ambiguous Policy Application language.

2.       Lack of Expert Testimony

The defendants also contend that the court should grant summary judgment because Admiral has failed to produce expert testimony as to (1) the issue of the defendants' negligence or (2) the reasonableness of the defendants' interpretation of the Policy language.  See Defs.' Mem. at 9.  In the absence of expert testimony, the defendants argue, Admiral cannot show the defendants were negligent; without showing the defendants were negligent, they assert, Admiral cannot show that Voigt's September 29, 2016 email constituted a "Claim", i.e., a "written demand for money or services" for a "Professional Incident" resulting from "a negligent act, error, or omission" by the insured.  Policy §§ IV(E), IV(SS).  Admiral disagrees, arguing that no expert is required for an insurer to evaluate coverage.  See Pl.'s Opp'n to Mot. for Summ. J. at 17.  The court agrees with Admiral.

While Connecticut requires expert testimony in certain negligence cases, this is not the case when it comes to determining the scope of insurance policy coverage. See, e.g., Poulin v. Yasner, 64 Conn. App. 730, 733 (2001) (holding, where a patient brought both medical malpractice and breach of contract claims against a physician, that "[b]ecause a contract claim involves a situation where the [parties] contract for a specific result[,] proof of a contract claim does not usually require expert . . . testimony.").  Ultimately, "[e]xpert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors."  Osborn v. City of Waterbury, 333 Conn. 816, 826, 220 A.3d 1, 7 (2019) (citation omitted).

In arguing that Admiral was required to disclose experts to demonstrate defendants' negligent treatment of Voigt, it appears that the defendants have confused the cause of action.  To survive summary judgment, Admiral need not prove that

13

defendants engaged in medical malpractice—that is the subject of the claim in the underlying dispute.  Instead, Admiral must show that a reasonable juror could find that defendants received the email from Voigt prior to completing their policy application.  Even though the definition of a Claim specifies that the demand for money or services must spring from "a negligent act, error, or omission," that does not transform this case into a malpractice action.  Rather, it informs the application of the definition of a Claim to what the factfinder determines to be the relevant facts.

To address the claim that the Policy's Prior Knowledge Exclusion bars coverage, defendants also aver that Admiral was required to offer an expert to meet the objective prong of the relevant inquiry.  It is true that Connecticut analyzes these claims under "a two-part, subjective-objective test to determine whether the exclusion bars coverage for a particular claim, asking first, whether the insured had actual knowledge of a suit, act, error or omission, a subjective inquiry; and second, whether a reasonable professional in the insured's position might expect a claim or a suit to result, an objective inquiry." Wallingford Grp, LLC v. Arch Ins. Co., 2020 WL 4464629, at *6 (D. Conn. May 11, 2020) (quoting Metropolitan Dist. Comm'n v. QBE Americas, Inc., 416 F. Supp. 3d 66, 72 (D. Conn. 2019)).  Here, there is a clearly a genuine dispute of material fact with respect to the first prong of the subjective-objective test.  Even if there were not, defendants do not cite any caselaw asserting that expert testimony is required to assess the second prong—whether the facts known to the insured could reasonably be expected to give rise to a Claim.  Indeed, it appears that courts in this District regularly conduct this inquiry without the aid of experts.  See, e.g., Wallingford Grp, 2020 WL 4464629, at *7; QBE Americas, Inc., 416 F. Supp. 3d at 72–73; Grimes v. Am. Guar.

and Liab. Ins. Co., 2012 WL 13026773, at *2–3 (D. Conn. Sept. 28, 2012).  Thus, the court will not grant summary judgment to the defendants on the ground that Admiral has failed to produce expert testimony.

Ultimately, whether Voigt's September 29, 2016 email constituted a Claim under the Policy remains an issue of disputed material fact, not because of ambiguous language or lack of expert testimony, but because reasonable jurors could reach differing conclusions as to whether the defendants even received Voigt's email and, if they did, whether it is a "Claim" under the definition that applies to the Policy Application.  Compare with Ruling Denying Plaintiff's First Motion for Summary Judgment at 2 (Doc. No. 85).[6]  For the reasons explained above, the defendants' Motion for Summary Judgment is denied in full.[7]

───────────────

[6] In their Motion for Summary Judgment, the defendants rely on this court's September 22, 2021 Ruling for the proposition that "it is the law of the case" that Admiral must "'. . . come forward with any evidence upon which a reasonable jury could find [defendants were] negligent in the rendering of Voigt's treatment, or that [defendants] could not have reasonably believed Voigt's email was anything other than a claim for malpractice.'"  See Defs.' Mem. at 9 (quoting Ruling Denying Pl.'s Mot. for Summ. J. at 3).  However, the defendants stretch the court's prior Ruling too far.

In that Ruling, the court construed the facts in the light most favorable to the defendants (as is proper when considering a plaintiff's motion for summary judgment) and emphasized that Admiral had come forth with no evidence to contradict a reasonable juror's finding in the defendants' favor, given that the plaintiff's first Summary Judgment Motion was filed before any discovery had taken place.  The court's present Ruling on the defendants' Motion for Summary Judgment relies on a more robust record, after the close of discovery, and construes the facts in the light most favorable to the plaintiff on this issue, since the defendant moved for summary judgment.  Issues of fact continue to exist as to whether Voigt's email constitutes a Claim, as discussed above, because the record evidence could lead to different reasonable findings as to whether Voigt sent the email to the defendants.  See Ruling Denying Pl.'s First Mot. for Summ. J. at 2 ("[t]he court concludes that the answer to th[e] question [whether the email is a Claim under the Policy] turns on a disputed issue of material fact.").

[7] The defendants also seek summary judgment on their four counterclaims.  See Defs.' Mem. at 15-20.  However, the court addresses each counterclaim below in connection with the plaintiff's Motion for Partial Summary Judgment.  See discussion infra pp. 16–20.  In addressing the plaintiff's Motion, the court views the facts in the light most favorable to the defendants.  However, even reading the record in the light most favorable to the defendants, the court grants summary judgment to the plaintiff on its Motion as to the bad faith counterclaims.  See id.  Therefore, because the court grants summary judgment to the plaintiff even when applying a standard more favorable to the defendants, it denies the defendants' Motion for Summary Judgment as to the counterclaims.

B.      Plaintiff's Motion for Partial Summary Judgment (Doc. No. 102)

Admiral seeks summary judgment as to four Counterclaims raised by the

defendants.  Each Counterclaim sounds in bad faith.  "Under [the] precedent" of the

Connecticut Supreme Court, "a bad faith action must allege denial of the receipt of an

express benefit under the [insurance] policy." Capstone Bldg. Corp. v. Am. Motorists

Ins. Co., 308 Conn. 760, 794 (2013).  Stated differently, "the underlying covenant of

good faith and fair dealing in a contractual relationship 'is not implicated by conduct that

does not impair contractual rights.'"  Chorches v. Stewart Title Guar. Co., 48 F. Supp.

3d 151, 157 (D. Conn. 2014) (quoting id. at 795, 67 A.3d 961).

"Bad faith in general implies both actual or constructive fraud, or a design to

mislead or deceive another, or a neglect or refusal to fulfill some duty or some

contractual obligation, not prompted by an honest mistake as to one's rights or duties,

but by some interested or sinister motive . . . . Bad faith means more than mere

negligence; it involves a dishonest purpose." Capstone, 308 Conn. at 795 (internal

quotations and citations omitted).  As the court discusses below, no reasonable juror

could find, on the basis of the record evidence, that Admiral has acted in bad faith as

alleged by the defendants.

1.      Counterclaim One: Bad Faith in Litigating the Instant Action

The court grants summary judgment to Admiral as to the First Counterclaim,

which alleges bad faith for the insurer's instigating of this action.  Even viewing the facts

in the light most favorable to the defendants, the defendants have not been deprived of

their right to a defense in the underlying action as is required in an action alleging bad

faith.  See Capstone, 308 Conn. at 794.  While Admiral disclaimed coverage, see Defs.'

Local R. 56(a)2 Statement of Facts as to Counterclaims ("Defs.' Counterclaim SOF")

16

(Doc. No. 107-1), the defendants have produced no evidence on the basis of which a reasonable juror could find that Admiral ceased to provide a defense.  Rather, the record demonstrates that Admiral continued to provide a defense subject to a reservation of rights before filing this action.  <u>See</u> Withdrawal of Disclaimer of Coverage (Doc. No. 100-23); Smola Deposition at 116 (Doc. No. 100-5) (confirming that "Admiral is now defending the case under a reservation of rights").  In bringing this action for a declaratory judgment while continuing to represent Admiral under a reservation of rights, Admiral has taken the "prudent, if not ordinary course."  <u>See</u> <u>Nash St., LLC v. Main St. Am. Assurance Co.</u>, 337 Conn. 1, 22 (2020); <u>see also</u> <u>Colony Ins. Co. v. Walker</u>, 2010 WL 3257651, at *3 (D. Conn. Aug. 16, 2010) (agreeing with one party's assertion that "courts have repeatedly held that a proper course of action for an insurer to follow is to defend the policyholder under a reservation of rights and commence a declaratory judgment action").  Even if not all insurers pursue a reservation of rights approach, it remains the sensible option due to the fact that protects both insurer and insured alike.  <u>R.T. Vanderbilt Co. Inc. v. Hartford Accident & Indem. Co.</u>, 171 Conn. App. 61, 212 (2017).  Because no reasonable juror could find that Admiral denied the defendants a benefit under the Policy, nor that Admiral acted by any "dishonest purpose" in bringing this declaratory action, <u>see</u> <u>Capstone</u>, 308 Conn. at 795, the court grants summary judgment to Admiral as to the defendants' First Counterclaim.

      2.      Counterclaim Two: Bad Faith Failure to Investigate the Coverage Claim

      The court likewise grants summary judgment to Admiral as to the Second Counterclaim sounding in bad faith for failure to investigate the defendants' coverage Claim.  The instant Policy reserves to Admiral discretion over how to investigate a

Claim.  <u>See</u> Policy § III ("We may make such investigation of any Claim as we deem expedient").

The Connecticut Supreme Court has held that there is no "cause of action based solely on the insurer's failure to investigate" where the "insurance policy at issue provides that the decision of whether and how to investigate lies exclusively with the insurer."  <u>Capstone</u>, 308 Conn. at 793–94.  No bad faith cause of action exists under such circumstances, the Court explained, because a failure to investigate would not deprive the insured of any benefit guaranteed under the policy.  <u>Id.</u>

Therefore, the defendants cannot sustain a bad faith claim for failure to investigate, because the Policy did not guarantee the defendants the benefit of an investigation.  The court thus grants summary judgment to Admiral as to the defendants' Second Counterclaim.

3.      Counterclaim Three: Bad Faith Failure to Defend the Underlying Case

The court also grants summary judgment to Admiral as to the Third Counterclaim.  Defendants assert that Admiral did not properly instruct counsel in the underlying case on the most effective defense strategy.  Pl.'s Mot. for Summ. J. at 1. However, the Connecticut Supreme Court has "long held that <u>even</u> when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured."  <u>Metro. Life Ins. Co. v. Aetna Cas. and Sur. Co.</u>, 249 Conn. 36, 61 (1999).  As such, it was defendants' goals and interests that shaped defense strategy in the underlying case, not Admiral's.  <u>See</u> CT Rules of Professional Conduct 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued.").

18

Because they were not the client, Admiral had no ability to direct defense strategy, and thus no reasonable juror could find that Admiral acted in bad faith by failing to pursue the best trial strategy in the underlying case.  Summary judgment is therefore granted to Admiral as to the Third Counterclaim.

4.      Counterclaim Four: Bad Faith for Voigt's Forehead Claim

Defendants allege a bad faith claim based on Admiral's effort to secure a declaratory judgment concerning their obligations in the underlying tort case, including for Voigt's alleged forehead injuries.  See Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. at 4.  For the reasons discussed above with respect to the First Counterclaim, see discussion supra pp. 15–16, no reasonable juror could find that the defendants have been deprived of a defense in the underlying case nor is Admiral's pursuit of a declaratory judgment "bad faith."

Though the forehead injury was not mentioned in either the first or second email to Admiral, the record suggests it occurred during the same August 2016 treatment where Voigt's legs were burned.  December 2017 Letter from Attorney Green (Doc. No. 100-14).  Moreover, the Policy's definition of a Claim—which governs the Policy Application, see discussion supra Section IV.A.1—includes Related Claims, which are defined as Claims based upon the same or related "facts," "circumstances," "situations," "transactions," or "events".  See Policy at 16.  If Admiral can prove that the defendants are not covered under the Policy due to their failure to report the Claim concerning Voigt's leg, no reasonable juror could find that the injury to Voigt's forehead is not a Related Claim under the Policy.

Put simply, Admiral's efforts to ascertain its obligations under the Policy while still defending the defendants under a reservation of rights do not evince a "dishonest

purpose." <u>Capstone</u>, 308 Conn. at 795.  Accordingly, summary judgment is granted to Admiral as to the Fourth Counterclaim.

## V.   CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment (Doc. No. 100) is denied, and the plaintiff's Motion for Summary Judgment as to the Counterclaims (Doc. No. 102) is granted.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of October 2022.


        /s/ Janet C. Hall
       Janet C. Hall
       United States District Judge